IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DR. RAMESH C. DHINGRA and RAMESH C. DHINGRA MD SC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 10 C 7553 |
| v. | ) ) | Judge Virginia M. Kendall |
| PNC FINANCIAL SERVICES GROUP, INC. and PNC BANK, NA, as successor in interest to National City Bank, as Successor in interest to Mid America Bank, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Dr. Ramesh Dhingra ("Dhingra") and Ramesh Dhingra MD SC ("Dhingra MD") (together "Plaintiffs") filed suit against PNC Financial Services Group ("PNC Financial") and PNC Bank, NA ("PNC") (together "Defendants"). Plaintiffs alleged, in Counts I-CXVIII, claims of conversion relating to 118 fraudulently endorsed checks from November 1, 2007 through February 1, 2010. Count CXIX alleged conversion in the alternative, relating to fraudulently endorsed checks from August 8, 2005 through February 1, 2010, including the 118 aforementioned checks. On April 12, 2011 the Court dismissed PNC Financial from the case with prejudice. PNC now moves to dismiss Count CXIX. For the following reasons, the Court grants PNC's Motion to Dismiss Count CXIX in its entirety.

**STATEMENT OF FACTS**

The following facts are taken from Plaintiffs's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

Dhingra alleges that from August 2005 through February 2010, her employee Shivaun Straub ("Straub") fraudulently obtained possession of and deposited checks that were made out either to Dhingra or Dhingra MD without Dhingra's knowledge or consent. (Compl. ¶¶ 6-9.) Dhingra claims that Straub forged Dhingra's signature on the back of each check and that Dhingra had no knowledge that the checks were taken from her until January 2010. (Compl. ¶¶ 10, 17.) Straub took the fraudulently endorsed checks to PNC, which negligently paid the checks to Straub's personal account, in violation of the Illinois Uniform Commercial Code. (Compl. ¶ 14.) Straub deposited only a few checks per month at PNC to avoid raising suspicion, but did so on a regularly monthly basis. (Compl. ¶ 24.) From August 8, 2005 through January 21, 2010, Straub stole and deposited at least $539,299.12 into her own personal account. Of that amount, at least $314,943.45 came from checks deposited between November 1, 2007 and February 12, 2010. (Compl. ¶¶ 21, 32.)

Dhingra learned of the fraud when members of an independent billing department made an unannounced visit to her office on January 25, 2010. (Compl. ¶ 29.) Straub, "realizing her scheme to defraud would be detected," confessed to fraudulently endorsing the checks. (Compl. ¶ 30.)

Plaintiffs filed suit in the Circuit Court of Cook County alleging 118 Counts of conversion and one Count of conversion in the alternative, claiming that Straub's actions constituted an ongoing scheme. (Compl. ¶ 31.) Defendants timely removed. The Court previously dismissed PNC Financial from the case and now PNC moves to dismiss Count CXIX.

**STANDARD OF REVIEW**

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain

a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *Id.* A claim has facial plausibility when the pleaded factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 1949.

## DISCUSSION

**I.     Count CXIX**

Count CXIX alleges conversion in the alternative. Specifically, Plaintiffs allege that they suffered damages in excess of $539,299.12 as a direct result of PNC's accepting and depositing Straub's forged checks from August 5, 2005 through January 21, 2010. PNC moves to dismiss—arguing first that claims relating to checks deposited prior to November 1, 2007 are time-barred and, second, that the remaining claims in Count CXIX are redundant in light of the claims made in Counts I-CXVIII.

**A.     Statute of Limitations**

Plaintiffs argue that the conversion of all of the checks from 2005 onwards constituted a single, continuing wrong and that therefore none of the converted checks is barred by the applicable three-year statute of limitations. 810 ILCS 5/3-118(g) ("an action for conversion of an instrument,

3

for money had and received, or like action based on conversion . . . must be commenced within 3 years after the cause of action accrues."). The Court disagrees.

As an initial matter, "Illinois courts have held that a cause of action for conversion of negotiable instruments accrues at the time the check is negotiated." *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 441 (7th Cir. 2005) (applying Illinois law and citing *Haddad's of Ill., Inc. v. Credit Union 1 Credit Union*, 678 N.E.2d 322, 326 (Ill. App. Ct. 1997). Indeed, in Counts I-CXVIII, Plaintiffs only seek conversion for those checks that fall within the three-year statute of limitations. In Count CXIX, however, Plaintiffs seek to apply the "continuing violation rule." Pursuant to this rule, Plaintiffs allege that the fraudulently endorsed checks were part of a series of fraudulent activity similar to an ongoing scheme, plan or conspiracy. Because the negotiation of each check is part of a continuing wrong, Plaintiffs seek to apply the statute of limitations from the time that the most recent fraudulently endorsed check was negotiated, thereby bringing all of the checks deposited since August 2005 within the statute of limitations.

The Seventh Circuit explicitly rejected the application of the "continuing violation rule" to toll the statute of limitations in a factually similar case regarding a series of fraudulently endorsed checks. In *Rodrigue*, which Plaintiffs concede is the "most relevant" case on the matter, the Seventh Circuit addressed the issue of whether an employee's fraudulent endorsement of checks over an eighty-five month period constituted a continuing violation or a series of discrete acts. The court reversed the district court and held that "the continuing violation rule does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." In so holding, the court distinguished causes of action for medical malpractice that were based on a course of negligent treatment with cumulative effects and causes of action for

4

intentional infliction of emotional distress arising from a course of tortious acts considered as a whole. *See id*. at 443. The court clarified that a plaintiff may only proceed on a conversion claim based on those checks that fell within the three-year statute of limitations. *See id*. at 447.

Given the factual similarity between *Rodrigue* and the current case—both cases dealt with a series of checks fraudulently endorsed by an employee of a doctor's office over a period of years—the Court finds that the "continuing violation rule" does not apply to Plaintiffs's conversion claims. *See id*. ("The fact that [the employee] managed to negotiate hundreds of checks over an 85-month period is irrelevant insofar as [plaintiff's] right or ability to sue for conversion. Whether [the employee] had negotiated one or 1000, [plaintiff] had a valid cause of action for conversion; nothing about the repeated or ongoing nature of [the employee's] conduct affected the nature or validity of [plaintiff's] suit, beyond increasing her damages."). Moreover, unlike claims that arise from "a cumulation of wrongful acts, a claim for conversion does not pose undue difficulty for the victim in identifying the nature, origin, and extent of her injury." *Id*. at 443. While Plaintiffs's failure to discover the fraudulent activity for five years may make "the application of the ordinary rule seem harsh[,] . . . [plaintiff's] belated discovery of her injury has little or nothing to do with the nature of the claim for conversion." *Id*. at 444.

Plaintiffs's attempts to distinguish *Rodrigue* are unavailing. Plaintiffs claim that the procedural posture of *Rodrigue*—the case was appealed following a bench trial—precludes its applicability here. But the Seventh Circuit clearly held that, as a matter of law, the "continuing violation rule" does not apply to claims of conversion relating to a series of fraudulently endorsed checks that occurred over three years before the plaintiff filed suit. *See id*. at 440 (reversing the district court's "legal determination" that the "continuing violation rule" applied to a case where an

5

employee fraudulently endorsed a series of checks). In arguing that the Court is "premature[ly]"[1] applying *Rodrigue* because discovery may reveal that PNC was involved in concealing the fraud, Plaintiffs are attempting to amend their Complaint through their response brief. (Doc. 34 at 1.) Plaintiffs's Complaint only alleges that PNC negligently deposited the checks at issue in Straub's account; it does not allege that PNC committed fraud. (Compl. ¶ 14.) Because Plaintiffs may not amend their Complaint by arguments made in their response brief, the Court does not consider the argument that PNC fraudulently concealed Straub's activity. *See Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993) (party opposing a motion to dismiss may not amend the complaint by way of arguments made in a brief). The Court also notes that Plaintiffs, in failing to raise allegations of fraud against PNC in their Complaint, have also failed to plead fraudulent conduct with the specificity required under Federal Rule of Civil Procedure 9. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (to satisfy the heightened pleading requirements of Rule 9, a plaintiff must set forth "the who, what, when, where, and how" of the alleged fraud).

Therefore, Plaintiffs may only seek relief on those checks that fall within the three-year statute of limitations. Plaintiffs's claims relating to checks deposited before November 1, 2007 are time-barred.

    **B.**    **Discovery Rule**

Plaintiffs do not argue that the discovery rule should apply to toll the statute of limitations in this case, but even if they had, the Court finds the discovery rule inapplicable.

"[T]he discovery rule is an equitable exception to the ordinary rule that the statute of limitations begins to run with the accrual of the cause of action." *Rodrigue*, 406 F.3d at 445.

---

[1] Doc. 34 at 2.

Specifically, the discovery rule "tolls the statute of limitations until such time as the plaintiff knew or reasonably should have known that she has a cause of action for her injury." *Id*. Citing the commercial policies underlying the Uniform Commercial Code and the fact that the victim of the conversion is in the best position to easily and quickly detect the loss and take appropriate action, Illinois appellate courts, along with a majority of other jurisdictions, have found that "the discovery rule does not apply to causes of action for conversion of negotiable instruments." *Haddad's*, 678 N.E.2d at 326 (collecting cases). While the discovery rule may be applicable in cases where fraudulent concealment is alleged, here Plaintiffs have not sufficiently pled that PNC attempted to fraudulently conceal Straub's activity. *See id*. at 325 (noting that "the vast majority of authority runs strongly against applying the discovery rule to an action for conversion of negotiable instruments in the absence of fraudulent concealment on the part of the defendant."). As previously stated, Plaintiffs may not rely on allegations of fraudulent concealment in their response brief to amend their Complaint and invoke the discovery rule. *See Harrell*, 13 F.3d at 236.

Therefore, Plaintiffs the discovery rule in inapplicable and does not toll the statute of limitations. Plaintiffs's claims relating to checks deposited before November 1, 2007 remain time-barred.

### C. Remaining Claims in Count CXIX

Dhingra advanced Count CXIX as a separate cause of action in order to bring checks within the statute of limitations that, if pled individually, would be time-barred. Since the Court finds that the checks deposited prior to November 1, 2007 are time-barred, the only remaining checks referred to in Count CXIX are those referred to individually in Counts I-CXVIII. As Counts I-CXVIII also allege separate conversion claims for each check, the remaining conversion claims in Count CXIX

are redundant, mimicking the claims in Counts I-CXVIII. *See Archer Daniels Midland Co. v. Hartford Fire Ins. Co.*, 243 F.3d 369 (7th Cir. 2001) (affirming district court's decision to deny leave to amend a complaint because "[m]uch of the new complaint is just the same claim multiplied, the sort of redundancy (four reformation theories rather than one) that does little beyond running up lawyers' bills"). Therefore, the Court finds that the remaining claims in Count CXIX are redundant and unnecessary and grants PNC's Motion to Dismiss Count CXIX in its entirety.

## CONCLUSION AND ORDER

The Court grants PNC's Motion to Dismiss Count CXIX in its entirety because the claims relating to checks deposited prior to November 1, 2007 are time-barred and the remaining claims in Count CXIX are redundant and unnecessary given the conversion claims alleged in Counts I-CXVIII.

So ordered.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: June 20, 2011